UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NICOLE BENJAMIN,                                     :
                     Plaintiff,               :
                                       :               **OPINION AND ORDER**
v.                                                   :
                                       :               13 CV 8699 (VB)
WILSON TERRERO, individually, and as an              :
aider and abettor, and CHRISTOPHER                   :
JOHNSON, individually and as an aider and            :
abettor,                                             :
                     Defendants.              :
------------------------------------------------------------x

Briccetti, J.:

Plaintiff Nicole Benjamin brought this action pursuant to 42 U.S.C. §§ 1981 and 1983,

alleging employment discrimination and retaliation against defendants City of Yonkers,

Wilson Terrero, Charles Lesnick, and Christopher Johnson.  On November 24, 2014, the Court

dismissed all claims except plaintiff's retaliation claim against defendants Terrero and Johnson.

Before the Court is the remaining defendants' motion for summary judgment.  (Doc.

#76).  For the reasons set forth below, the motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

I.    Factual Background

The parties have submitted briefs, statements of facts, and declarations with supporting

exhibits, which reflect the following factual background.

    A.    The Parties

Plaintiff Nicole Benjamin, an African-American woman, worked as a legislative aide for

the Yonkers City Council for approximately six months, from January 3, 2012, until July 9,

2012.  Plaintiff was hired by defendant Johnson, a member of the Yonkers City Council, and

assigned to his office.  Defendant Terrero was also a member of the Yonkers City Council, and

served as the Democratic Majority Leader.  Terrero's chief of staff during 2012 was Nerissa Vitora (now known as Nerissa Pena).  While defendants Terrero and Johnson claim plaintiff reported directly to Johnson, plaintiff claims she reported to Terrero, Johnson, and Vitora. Plaintiff was the sole aide assigned to Johnson's office and Johnson supervised no employees other than plaintiff.

       B.       <u>Plaintiff and Johnson's Working Relationship</u>

Each City Council member had particular requirements and expectations for their legislative aides.  When plaintiff began her employment, she and Johnson agreed her hours would be 9:30 a.m. to 5:00 p.m. and as needed.  Plaintiff's job also required her to be available for meetings and community events, some of which took place during the evening and on weekends.  Johnson served as the Chair of the City Council's Budget Committee, which meant plaintiff had some duties, particularly during the budget season, unique to her position as Johnson's legislative aide.[1]  According to defendants, budget season began on April 15, when the Mayor introduced a proposed budget.  The City Council members then reviewed the proposed budget, held hearings throughout the month of May, and were required to pass a budget by June 1.

Shortly after beginning her employment in January 2012, defendant Johnson told plaintiff she would have a six-month evaluation period.  Throughout plaintiff's employment, plaintiff and Johnson had a difficult working relationship characterized by miscommunications regarding expectations and the scope of plaintiff's job responsibilities.  Plaintiff claimed to lack a clear understanding of what her job entailed and at times questioned directives from Johnson.

---

[1]     While plaintiff's Rule 56.1 statement denies this contention, it is supported by the declarations of Johnson and Terrero, and statements plaintiff made during her deposition.  <u>See</u>, <u>e.g.</u>, Raimondi Decl. Ex. T, 50:15–17, 97:3–10.

Due to repeated miscommunications between Johnson and plaintiff, Johnson asked plaintiff to prepare a list of what she perceived her job duties to be.  On June 11, 2012, plaintiff and Johnson had an email exchange regarding plaintiff's list of job responsibilities and a planned discussion to address Johnson and plaintiff's issues.  In an email to plaintiff, Johnson explained he wanted plaintiff to produce the list because they were "missing each other" and their working relationship was "not working."  (Raimondi Decl. Ex. M).  Plaintiff refused to provide a list of her job duties, saying she did not want to be "presumptuous" and she was "not comfortable managing up."  (Id.).  Shortly following the June 11, 2012 email exchange, Johnson gave plaintiff a written list of her job responsibilities.

Johnson claims he and plaintiff did not work well together, and it appeared to him as though plaintiff was resentful of the tasks he asked her to perform.  The declarations of Terrero and Vitora support Johnson's assertions that he and plaintiff did not work well together.

C.     Alleged May 2012 Complaint to Majority Leader Terrero

Plaintiff claims similarly-situated white legislative employees were not required to attend "events at night, to work on Sundays, to have pay docked when they were genuinely sick, or to go over their immediate supervisors' heads to simply ask for time off."  (Wotorson Decl. Ex. 1 ¶ 13).  Plaintiff further claims she "reasonably complained about this" to Terrero and Terrero informed her he had escalated her complaints about Johnson's "comp" practices to the Commissioner of Human Resources, Paula Redd.  (Id. ¶ 14).  Plaintiff also claims she raised the issue of disparate treatment from other similarly-situated white legislative employees with Johnson who replied that compensatory time is "at the pleasure of the principal."  (Wotorson Decl. Ex. 1 ¶ 20).

Specifically, plaintiff claims she complained to Terrero in late May 2012 that she "was

being forced to work much later than similarly situated legislative employees, who were white, without any additional compensation."[2]  (Wotorson Decl. Ex. 1 ¶ 12).  According to plaintiff, she used the term "disparate treatment" in explaining her situation.  (Id.).  Based on Terrero's physical expressions, plaintiff believed Terrero understood her use of the term "disparate treatment" had racial discrimination "overtones."  (Id.).  Plaintiff claims she explained to Terrero that one or more "white" legislative employees had openly refused to work late hours or on weekends without "comp time."  (Id.).  The only evidence supporting plaintiff's contention that she complained to Terrero in May 2012 regarding racial discrimination is an affidavit submitted by plaintiff in opposition to defendants' motion for summary judgment.

Terrero denies having a conversation with plaintiff in or around May 2012, and both Terrero and Johnson deny speaking about plaintiff in or around May 2012.  Plaintiff does not refer to the alleged conversation with Terrero in any of the emails she sent contemporaneously with her termination or in her complaint filed with the New York State Division of Human Rights (discussed below), and the account of plaintiff's alleged conversation with Terrero in plaintiff's affidavit contradicts her deposition testimony.  Plaintiff did not identify any comparators by race during her deposition, which plaintiff explains is because she "was never asked."  (Wotorson Decl. Ex. 1 ¶ 12).

When asked at her deposition if she remembered what she said to Terrero concerning Johnson, plaintiff said, "I don't particularly recall."  (Raimondi Decl. Ex. T, 57:8–18).  When asked about the subject matter of her complaints to Terrero, plaintiff said, "the same things that I just told you before about the comp time and the hours and the treatment."  (Id. at 57:25–58:3).

---

[2]     During her deposition, plaintiff acknowledged that she routinely arrived at work around 10:00 or 11:00 a.m. because she attended after hours community events and meetings. (Raimondi Decl. Ex. T, 95:25–96:8).

Plaintiff also gave the following testimony:

> Q.    Okay.  Other than telling Mr. Terrero and Mr. Larkin that he wasn't giving
>       you comp time and you were working longer hours than others and that he
>       said demeaning things to you, did you say anything else to either one of
>       them?
> A.    No.

(Id. at 58:22–59:5).

###    D.    June 2012 Incident with Councilman Lesnick

On the evening of Thursday, June 21, 2012, plaintiff attended a gala on behalf of

Councilman Johnson.  During the event and while she was in the restroom, plaintiff was called to

the stage to present a proclamation on behalf of State Senator Andrea Stewart-Cousins.  Plaintiff

claims when she returned from the restroom, Councilman Charles Lesnick "physically grabbed

[plaintiff] and attempted to physically force [her] to go on to a public stage."  (Wotorson Decl.

Ex. 1 ¶ 4).  Plaintiff further alleges the touching was "offensive" and "unwelcome."  (Id.).

Around 8:30 p.m. that evening, plaintiff sent Johnson a text message regarding the

incident.  Plaintiff told Johnson that Lesnick tried to drag her to the podium, but she told Lesnick

she was not going to be "obsequious" and force herself on the stage.  (Raimondi Decl. Ex. L).

Johnson replied, "You weren't to present.  Sorry you were in that position."  (Id.).  Plaintiff did

not complain further regarding the incident and said, "It happens."  (Id.).  Plaintiff then said she

would be out the next day because she needed to catch up with her daughter and "recharge."

(Id.).  Johnson responded that plaintiff needed to give him advance notice of days off.  Plaintiff

remarked how little time she had taken off, that she had "dragged in" with a smile every day, and

told Johnson to enjoy his weekend.  Johnson replied that plaintiff had taken off plenty of time

without his knowledge and he told plaintiff, "See you tomorrow."  (Id.).  Plaintiff replied she

needed a "mental health day" and had already promised her daughter a play date.  (Id.).  Johnson

said "we talked about this last week" and told plaintiff the short notice of the day off was

insufficient.  (Id.).

Plaintiff claims she then sought and obtained permission to take the day off from Vitora, Terrero's chief of staff.  Vitora denies giving plaintiff permission to take the day off.[3]

Plaintiff did not come to work on Friday, June 22, 2012.  She later tried to take the day as a sick day.  Johnson told Marie Neumayer, the employee responsible for payroll, that the time off was not approved, plaintiff did not tell him she was sick, and the absence was without leave.

On June 25, 2012, plaintiff copied Johnson on an email to Lesnick regarding the incident at the gala saying she assumed Lesnick had "engaged in spurious accusations about [her] performance" and that he "cross[ed] the line and publically assault[ed]" her.  (Raimondi Decl. Ex. N).  In a later email to Lesnick, plaintiff stated:

> [A]t the end of the day, your repeated witnessed offensive grabbing of me in a hostile manner without my consent at the front of a banquet hall was completely unwarranted.  I am certain this behavior is an anomaly and would never occur to another fellow female city employee.

(Id.).  Lesnick responded to plaintiff's initial email, copying Johnson.  Johnson claims he had no other communication with plaintiff regarding the emails about the gala incident, and only spoke to Lesnick about the emails after plaintiff copied Johnson on the first email.

E.    Plaintiff's Termination

On or about June 26, 2012, Johnson informed Terrero he intended to terminate plaintiff's employment due to her performance and attitude.  Johnson thought he needed Terrero's approval

---

[3]     Plaintiff produced a record from her cell phone company showing she sent Vitora a text message on June 22, 2012, at 5:37 a.m.  Defendants claim plaintiff produced this record for the first time in opposition to defendants' summary judgment motion in spite of the fact that defendants had requested plaintiff's cell phone records during discovery.  Defendants argue plaintiff's phone records are inadmissible as a result.  The Court need not reach this issue, however, because whether or not plaintiff exchanged text messages with Vitora early in the morning of June 22, 2012, is immaterial.

to terminate plaintiff's employment because Terrero was the City Council Majority Leader. Terrero asked Johnson to wait until the end of the week to terminate plaintiff, but Johnson gave plaintiff a letter on June 27, 2012, terminating her employment.  Plaintiff's termination became effective on July 9, 2012.

At some point after she received the termination letter from Johnson, plaintiff met with Terrero and Vitora.  During that meeting, plaintiff complained about working long hours and being denied compensatory time after working late evenings.  Terrero and Vitora claim that plaintiff did not state to Terrero, or otherwise suggest, that she was being subjected to long hours or being denied compensatory time due to her race.

On July 1, 2012, plaintiff emailed Terrero and Minority Leader John Larkin detailing her problems working with Johnson over the course of her employment.  Plaintiff admitted that on several occasions, Johnson accused her of making repeated mistakes and failing to listen. Plaintiff acknowledged Johnson frequently expressed his dissatisfaction with her performance and said in June that the situation was "not working."  (Raimondi Decl. Ex. S, at 3).  The email says Johnson screamed at her about poor performance, accused her of messing up meetings, causing him to miss events, and not listening.  Although plaintiff's email was nearly 12 single-spaced pages in length and described events that occurred throughout her employment, the email does not contain any reference to plaintiff's having complained previously about disparate treatment or racial discrimination.  The email also lacks any reference to the complaint plaintiff allegedly made to Terrero in May 2012.

According to Ivy Reeves, a legislative aide to another City Councilman, Lesnick told Reeves that plaintiff was terminated because "all of her allegations and complaints in the digital e-mails and messages made her 'too dangerous' to continue to be employed by the City

Council."  (Wotorson Decl. Ex. 8 ¶ 4).

Following her termination, plaintiff was replaced by another African-American female.

II.    Procedural History

    A.    Plaintiff's SDHR Complaint

On July 11, 2012, plaintiff filed a complaint against Johnson, Lesnick, and the City of Yonkers with the New York State Division of Human Rights ("SDHR") alleging racial and gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law.  Plaintiff's SDHR complaint was based on the June 2012 incident with Councilman Lesnick and plaintiff's subsequent termination.  None of plaintiff's submissions to the SDHR mentions plaintiff's alleged May 2012 complaint to Terrero.  Following an investigation, the SDHR determined there was no probable cause to believe defendants had engaged in unlawful discriminatory practices.  The SDHR concluded the investigation failed to uncover evidence that plaintiff was subject to discrimination or that plaintiff was terminated in retaliation for opposing unlawful discriminatory practices.  Furthermore, the investigation produced evidence that defendants had legitimate non-discriminatory reasons to terminate plaintiff's employment.

Plaintiff did not appeal the SDHR determination in state court or request review of her Title VII claim by the United States Equal Employment Opportunity Commission.

    B.    The Instant Litigation

Plaintiff filed her original complaint on December 6, 2013, against Johnson, Lesnick, Terrero, and the City of Yonkers.  Defendants moved to dismiss, and plaintiff filed an amended complaint on March 18, 2014.  Defendants again moved to dismiss.  On November 24, 2014, the Court granted the City of Yonkers's and Lesnick's motions to dismiss in their entirety, and

granted Terrero's and Johnson's motions to dismiss, except with respect to plaintiff's retaliation

claim to the extent it was based on her alleged May 2012 complaint.

**DISCUSSION**

I.    <u>Legal Standard</u>

The Court must grant a motion for summary judgment if the pleadings, discovery

materials before the Court, and any affidavits show there is no genuine issue as to any material

fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing

law . . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot

preclude summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a

reasonable jury could return a verdict for the non-moving party.  <u>See id</u>.  The Court "is not to

resolve disputed issues of fact but to assess whether there are any factual issues to be tried."

<u>Wilson v. Nw. Mut. Ins. Co.</u>, 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving

party's burden to establish the absence of any genuine issue of material fact.  <u>Zalaski v. City of</u>

<u>Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element

of her case on which she has the burden of proof, then summary judgment is appropriate.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323.  If the non-moving party submits "merely colorable"

evidence, summary judgment may be granted.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at

249-50.  The non-moving party "must do more than simply show that there is some metaphysical

doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated

speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for her.  Dawson v. Cnty. Of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider admissible evidence.  Nora Bevs., Inc. v. Perrier Grp. Of Am. Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.    Retaliation Claims

Plaintiff alleges defendants retaliated against her in violation of her rights under Section 1981, as secured by Section 1983,[4] by terminating her employment after she complained to Terrero in May 2012 about her work hours as compared to similarly-situated white employees. Defendants contend the retaliation claim fails because plaintiff cannot show she engaged in any protected activity of which defendants were aware, and plaintiff cannot establish any causal connection between her alleged May 2012 complaint and her termination at the end of June 2012.

---

[4]     Plaintiff's Section 1981 claims must be analyzed under Section 1983 because they are asserted against state actors.  See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989) (holding Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor"); Gladwin v. Pozzi, 403 F. App'x 603, 605 (2d Cir. 2010) (summary order) (analyzing plaintiff's Section 1981 claims against a state actor under Section 1983).

The Court agrees with defendants.

Retaliation claims brought under Sections 1981 and 1983 are analyzed pursuant to the burden-shifting analysis established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010). First, plaintiff must establish a prima facie case of retaliation.  If plaintiff does so, a presumption of retaliation arises and the employer must articulate a legitimate, non-retaliatory reason for the action plaintiff alleges was retaliatory.  If the employer meets its burden, then plaintiff must show that retaliation was a substantial reason for the complained-of action.  Id.

To make out a prima facie case of retaliation, a plaintiff must establish that "(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."  Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013).

Unlike Title VII, Section 1981 provides for individual liability on the part of non-employers.  Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 75 (2d Cir. 2000) ("individuals may be held liable under § 1981").  A plaintiff seeking to impose individual liability under Section 1981, as enforced through Section 1983, must show evidence of a supervisor's "personal involvement" in the challenged conduct.  Id.; Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001).

A.    Defendant's Awareness That Plaintiff Engaged in Protected Activity

An employee's complaint may qualify as protected activity, satisfying the first element of a retaliation claim, "so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law."  Kelly v. Howard I. Shapiro &

Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013).  Such a complaint must clearly

express plaintiff's belief that she has been subjected to discrimination because of her race and

not just unfair treatment generally.  See Drumm v. SUNY Geneseo Coll., 486 F. App'x 912, 914

(2d Cir. 2012) ("[P]laintiff's allegations that her supervisor 'berated' her and made other harsh

comments . . . amount only to general allegations of mistreatment, and do not support an

inference that plaintiff had a reasonable good faith belief that she was subject to gender

discrimination."); Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC, 470 F. Supp. 2d

345, 357 (S.D.N.Y. 2007) (ambiguous complaints that do not make the employer aware of

alleged discriminatory misconduct do not constitute protected activity).

Here, assuming plaintiff genuinely believed herself to be the victim of racial

discrimination at the time she allegedly complained to Terrero, the Court nevertheless concludes

the evidence is insufficient as a matter of law to establish the second element of a retaliation

claim, namely that plaintiff engaged in protected activity of which defendants were aware.

"[I]mplicit in the requirement that the employer have been aware of the protected activity

is the requirement that it understood, or could reasonably have understood, that the plaintiff's

opposition was directed at conduct prohibited by Title VII."  Galdieri-Ambrosini v. Nat'l Realty

& Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).

Plaintiff claims that in late May 2012 she complained to Terrero that she was being

forced to work later hours without additional compensation, unlike similarly-situated legislative

employees who were white.  Plaintiff asserts she used the term "disparate treatment" in

explaining her situation to Terrero, and that based on Terrero's physical expressions, plaintiff

believed Terrero understood her use of the term "disparate treatment" had racial discrimination

"overtones."

Terrero denies plaintiff made any such complaints to him until <u>after</u> Johnson terminated plaintiff's employment on June 27, 2012.  Vitora says she was aware plaintiff was unhappy with her working conditions, but that she had not interpreted plaintiff's dissatisfaction to involve racial discrimination.

Moreover, plaintiff's deposition testimony makes clear that nothing about her alleged complaints to Terrero in May 2012 would have placed a reasonable person on notice that such complaints alleged racial discrimination.  Plaintiff was asked repeatedly about any and all complaints she made about Johnson or the terms of her employment.  In response, plaintiff never claimed to have complained about racial discrimination or anything that should have been interpreted as racial discrimination.  Plaintiff recalled complaining that she had to work nights and weekends and did not receive compensatory time like other legislative aides.  Plaintiff, however, said nothing about her race, the race of other legislative aides, or racial discrimination more generally.  <u>See</u> <u>Foster v. Humane Soc'y of Rochester & Monroe Cnty., Inc.</u>, 724 F. Supp. 2d 382, 395 (W.D.N.Y. 2010) (dismissing retaliation claim when the plaintiff's "own allegations . . . show instead that while she did complain about certain problems she was having at work, she did not complain that she was being discriminated against").  Furthermore, plaintiff acknowledged she was Johnson's only staff member and the only person who reported to him. Each Council member had one or more legislative aides who reported directly to him or her, and plaintiff acknowledged the alleged difference in treatment was that Johnson treated her differently than the other Council members treated their aides.

In contrast to her deposition testimony, in plaintiff's affidavit she states that in May 2012 she complained to Terrero that she "was being forced to work much later than similarly situated legislative employees, who were white, without any additional compensation."  Plaintiff's

affidavit also says she "specifically used the term 'disparate treatment'" in explaining her situation and that she "believed, based on their physical expressions that they certainly knew that [her] use of the term 'disparate treatment' had racial discrimination overtones." But because these statements in plaintiff's affidavit contradict her deposition testimony,[5] the Court does not consider them. Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996) ("a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony"); Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987) ("a party's affidavit which contradicts his own prior deposition testimony should be disregarded for summary judgment").

Viewing the evidence in the light most favorable to plaintiff, there was nothing in plaintiff's alleged complaint in May 2012 that could reasonably have led Terrero or Johnson to understand her objections were based on racial discrimination. Accordingly, as a matter of law, plaintiff cannot establish a prima facie case of retaliation.

B.   Causation and the McDonnell Douglas Burden-Shifting Analysis

Even if plaintiff could establish a prima facie case of retaliation, the Court concludes she has not produced sufficient evidence to support a rational finding that defendants' proffered reasons for terminating plaintiff's employment were, more likely than not, pretextual, and that

---

[5]      When asked in her deposition if plaintiff remembered what she said to Terrero concerning Johnson, plaintiff said, "I don't particularly recall." (Raimondi Decl. Ex. T, 57:8–18). When asked about the subject matter of her complaints to Terrero, plaintiff said, "the same things that I just told you before about the comp time and the hours and the treatment." (Id. at 57:25–58:3). Plaintiff also gave the following testimony:

Q.      Okay. Other than telling Mr. Terrero and Mr. Larkin that he wasn't giving you comp time and you were working longer hours than others and that he said demeaning things to you, did you say anything else to either one of them?

A.      No.

(Id. at 58:22–59:5).

retaliation was likely the real reason for her termination.  See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) (the ultimate burden of proving that defendant was intentionally retaliatory in its employment practices "remains at all times with the plaintiff"); Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (To establish pretext, "[t]he plaintiff must produce not simply 'some' evidence, but sufficient evidence to support a rational finding that the . . . reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action.") (internal quotation marks omitted).

Plaintiff was terminated immediately after she took a day off over Johnson's objection. Moreover, the record is replete with evidence supporting defendants' contention that plaintiff's termination was the culmination of a difficult working relationship.  In an email to Terrero and Larkin on July 1, 2012, plaintiff herself detailed her issues working with Johnson over the course of her six-month employment.[6]  Plaintiff admitted that on several occasions, Johnson accused

---

[6]     The events plaintiff described include the following:

i.   On January 10, 2012, Johnson became upset because plaintiff ordered a meal for herself for the City Council meeting, but failed to order a meal for Johnson.

ii.  Plaintiff parked in Johnson's parking spot while construction work was taking place in the garage.  On two occasions, she forgot to move her car on time.  She said, "Johnson berated me for acting like I am a Councilwoman.  I was flabbergasted he would not let the petty, name-calling behavior go and texted him back in the presence of a co-worker to, 'Knock it off with calling me Councilwoman.'  I know I am not the Councilwoman, not [sic] do I purport to be."  (Raimondi Decl. Ex. S, at 2).

iii. On May 3, 2012, Johnson screamed at her, "'You always screw up, mess up my meetings and don't listen to me.'  He said he missed his BBC interview on the budget because of me."  (Id. at 4).

iv.  On June 5, 2012, plaintiff stated Johnson raised his voice at her because she was not done with a press release that he needed and thought had already been done. Plaintiff said, "I didn't even waste my breath explaining to the Councilman that I never wrote a press release before and it was taking me a little while to review the budget material, take notes and outline the press release, amidst completing my

her of making repeated mistakes and failing to listen, and Johnson frequently expressed his dissatisfaction with her performance.  On June 11, 2012, Johnson asked plaintiff to produce a list of her job duties because plaintiff and Johnson were "missing each other" and their working relationship was "not working."  (Raimondi Decl. Ex. M).  Plaintiff refused to provide a list of her job duties, saying she was "not comfortable managing up."  (Id.).  Johnson terminated plaintiff's employment on June 27, 2012, almost exactly six months after she began working for Johnson, which is consistent with the fact that Johnson told plaintiff she would have a six-month evaluation period.

Furthermore, there is no evidence in the record linking plaintiff's termination to any purported complaint about racial discrimination.  Johnson claims he was not aware of any complaints by plaintiff in or around May 2012, or at any time prior to her termination, to Terrero or anyone else regarding her employment.  Terrero denies plaintiff complained to him, and that he ever had a conversation with Johnson regarding plaintiff's concerns related to her employment.  Terrero and Johnson claim that prior to June 26, 2012, they never discussed plaintiff, other than a single conversation at the time of her hiring when Johnson asked Terrero to pay plaintiff at a higher rate than the other legislative aides, and Terrero denied the request.

Plaintiff produced an affidavit from Ivy Reeves, another Councilman's legislative aide, in which Reeves claims Lesnick told Reeves that plaintiff was terminated because "all of her

---

        many other time sensitive duties.  I was so upset, I excused myself from my desk and walked over to Connie's desk for an Advil."  (Id. at 6).

v.   On June 11, 2012, Johnson emailed plaintiff regarding the status of a proclamation.  Plaintiff had assigned the proclamation to an intern and forgot to follow up.  Plaintiff apologized to Johnson and said, "Guess you forgot to remind me while you were signing the other proclamations and certificates on Friday afternoon."  Johnson replied, "You manage my office.  Everything is for you to remember.  The [part time] intern is not responsible for anything.  He is there to learn, not take away your responsibilities.  You cannot also rely on me to remind you what your assignments are, one time is all I got."  (Id. at 3).

16

allegations and complaints in the digital e-mails and messages made her 'too dangerous' to continue to be employed by the City Council."  (Wotorson Decl. Ex. 8 ¶ 4).  Even assuming Lesnick made such a statement to Reeves and that Reeves's statement about what Lesnick said is admissible, it would be insufficient to satisfy plaintiff's burden to "come forward with evidence establishing that it is more likely than not [that] the employer's decision was motivated, at least in part, by an intent to retaliate against" her for engaging in protected activity.  See El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 932–33 (2d Cir. 2010).  Nothing in Lesnick's alleged comment to Reeves suggests plaintiff's purported "allegations and complaints" had anything to do with racial discrimination.

Finally, plaintiff argues the temporal proximity between her alleged complaints in May 2012 and her receipt of a termination letter on June 27, 2012, raises a triable issue of fact.

The Court disagrees.

The temporal proximity between any purported complaint in May 2012 and plaintiff's termination at the end of June, is insufficient at the summary judgment stage to establish causation.  See El Sayed v. Hilton Hotels Corp., 627 F.3d at 933 ("The temporal proximity of events may give rise to an inference of retaliation for purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext.").  Plaintiff was terminated within days of failing to come to work over Johnson's stated objection, an event which took place during the weeks between plaintiff's alleged complaint and her termination.  Moreover, on June 11, 2012, Johnson asked plaintiff to produce a list of what she perceived her job duties to be because their working relationship was "not working."  (Raimondi Decl. Ex. M).  Plaintiff refused to provide a list of her job duties, saying she was "not comfortable managing up."  (Id.).

17

The time that elapsed after plaintiff's alleged complaint in May and the intervening June incidents demonstrating plaintiff and Johnson's difficult working relationship, undermines the strength of any inference due to temporal proximity that Johnson terminated plaintiff for retaliatory reasons.

III.    Qualified Immunity

Because the motion for summary judgment is granted on the merits, the Court need not reach defendants' alternative argument that they are entitled to qualified immunity.

**CONCLUSION**

Defendants' motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #76), and close this case.

Dated: January 13, 2017
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

18